**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
AURORA MORRISON, *on behalf of herself*
*and others similarly situated*,

              Case No. 7:18-cv-00531-VB

      Plaintiff

      v.

BARCEL USA, LLC,

       Defendant.
-------------------------------------------------------- x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………………………………………..ii

INTRODUCTION …………………………………………………………………………1

ARGUMENT ……………………………………………………………………………2

    I.    PLAINTIFF PLAUSIBLY ALLEGES THAT THE PRODUCT
        CONTAINS NON-FUNCTIONAL SLACK-FILL…………………………………2

    II.    PLAINTIFF PLAUSIBLY ALLEGES MATERIAL DECEPTION……………..8

    III.   PLAINTIFF PLAUSIBLY ALLEGES INJURY…………………………………..18

    IV.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF………………22

SUMMARY AND CONCLUSION………………………………………………....24

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
   2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866 (E.D.N.Y. July 17, 2013) ...................... 22

*Ackerman v. Coca-Cola Co.*,
   No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ........................... 13

*Arista Records Ltd. Liab. Co. v. Doe*,
   604 F.3d 110 (2d Cir. 2010) ................................................................................................. 7

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................................... 2, 6

*Bautista v. Cytosport, Inc.*,
   No. 15-CV-9081 (CS), 2016 U.S. Dist. LEXIS 171468 (S.D.N.Y. Dec. 12, 2016) ................. 5

*Belfiore v. Procter & Gamble Co.*,
   F. Supp. 3d 440 (E.D.N.Y. 2014) ......................................................................................... 22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 7, 8

*Bratton v. Hershey Co.*,
   No. 2:16-cv-4322, 2017 U.S. Dist. LEXIS 74508 (W.D. Mo. May 16, 2017) ................... 4, 16

*Daniel v. Mondelez Int'l, Inc.*,
   287 F. Supp. 3d 177 (E.D.N.Y. 2018) ........................................................................... passim

*Delgado v. Ocwen Loan Servicing Company, LLC*,
   2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014) ..................... 22

*Delgado v. Ocwen Loan Servicing, LLC*,
   No. 13-CV-4427, 2014 U.S. Dist. LEXIS 135758 (E.D.N.Y. Sep. 23, 2014) ................... 10, 22

*Escobar v. Just Born*,
   No. CV 17-01826, 2017 U.S. Dist. LEXIS 186573 (C.D. Cal. June 12, 2017) ................... 5, 17

*F.T.C. v. Cyberspace.com LLC*,
   453 F.3d 1196 (9th Cir. 2006) ............................................................................................. 10

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010) ................................................................................................. 2

*Fermin v. Pfizer, Inc.*,
   15-cv-2133, 2016 U.S. Dist. LEXIS 144851 (E.D.N.Y. Oct. 14, 2016) ........................... 12, 14

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995) ................................................................................................... 2

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................................................ 10

*Hanley v. Chicago Title Ins. Co.*,
    No. 12- 4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013).................................... 2

*Hendricks v. StarKist Co.*,
    30 F. Supp. 3d 917 (N.D. Cal. 2014) ....................................................................... 9

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013)..................................................................... 10

*Koehler v. Litehouse, Inc.*,
    2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) .................... 23

*Lazaroff v. Paraco Gas Corp.*,
    967 N.Y.S.2d 867 (Sup. Ct.) .................................................................................. 20

*Leonhart v. Nature's Path Foods, Inc.*,
    No. 13-cv-00492, 2014 U.S. Dist. LEXIS 164425 (N.D. Cal. Nov. 21, 2014).......................... 9

*Lonner v. Simon Prop. Grp., Inc.*,
    866 N.Y.S.2d 239 (App. Div 2008.) ...................................................................... 10

*Raines v. Byrd*,
    521 U.S. 811 (1997) ............................................................................................... 23

*Samet v. P&G*,
    No. 5:12-CV-01891, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) .................. 3, 8

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) ............... 9

*Thomas v. Costco Wholesale Corp.*,
    No. 5:12-CV-02908, 2014 U.S. Dist. LEXIS 46405 (N.D. Cal. Mar. 31, 2014)...................... 9

*United States v. 174 Cases*,
    287 F.2d 246 (3d Cir. 1961) ................................................................................... 16

*Verzani v. Costco Wholesale Wholesale Corp.*,
    641 F.Supp. 2d 291 (S.D.N.Y.) ............................................................................. 12

*Waldman v. New Chapter, Inc.*,
    714 F. Supp. 2d 398 (E.D.N.Y. 2010).................................................................... 3

*Watkins Inc. v. McCormick & Co. (In re McCormick & Co.)*,
    215 F. Supp. 3d 51 (D.D.C. 2016) ............................................................... 9, 14, 16

*Weisman v. LeLandais*,
    532 F.2d 308 (2d Cir. 1976) ................................................................................... 2

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008).................................................................................. 10

*Woods v. Maytag Co.*,
807 F. Supp. 2d 112 (E.D.N.Y. 2011).................................................................... 2

*Wurtzburger v. Ky. Fried Chicken*,
No. 16-cv-08186, 2017 U.S. Dist. LEXIS 205881 (S.D.N.Y. Dec. 13, 2017) ........ 15

**Statutes**

Cal. Bus. & Prof. Code § 12606.2(e) ...................................................................... 14

NY GBL § 349 ....................................................................................................... 5, 10

NY GBL § 350 .......................................................................................................... 5

**Other Authorities**

58 Fed. Reg. 64123, 64135 ...................................................................................... 6

58 FR 64123, 64128 ................................................................................................. 12

58 FR 64123, 64128-64129 ................................................................................. 13, 16

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................. 1

**Regulations**

21 C.F.R. § 100.100(a).............................................................................................. 2

## INTRODUCTION

Plaintiff AURORA MORRISON ("Plaintiff") hereby respectfully submits this Opposition to Defendant BARCEL USA, LLC's ("Barcel" or "Defendant") Motion to Dismiss Plaintiff's First Amended Complaint (herein "Amended Complaint" or "Am. Compl.").  On January 22, 2018, Plaintiff brought a Class Action Complaint seeking redress for the unfair, deceptive and otherwise improper business practices according to which Defendant packages its Takis rolled tortilla chips product (herein the "Chips" or the "Product").  A First Amended Class Action Complaint was then filed on May 14, 2018 and Defendant's Motion to Dismiss, here opposed by Plaintiff, was filed on May 29. 2018

The Product is packaged in non-transparent bags. The size of the bags in relation to the amount of chips actually contained therein makes it appear to consumers that they are buying more food than is actually being sold.  By increasing the size of the Product packaging and providing consumers with unnecessary empty space (or "non-functional slack-fill") rather than additional chips, Defendant deceptively induces consumers to make purchases they would not have made at the given prices had they been aware of the discrepancy between the size of the bags and the amount of food inside.  Plaintiff and Class members viewed Defendant's misleading Product packaging, reasonably relied in substantial part on the representation created by its size and were thereby deceived into purchasing the Product for a price they would not otherwise have been willing to pay. Through these unfair and deceptive practices, Defendant has collected millions of dollars that it would not have otherwise earned. Plaintiff brought this action to stop Defendant's deceptive practices.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'"  *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669,

673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).  A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.,* No. 12- 4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010)). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)).  Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' claims to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 129 S. Ct. at 1937.  Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548.

Defendant argues in its brief (herein "Def. Mem.") that the Amended Complaint fails by these standards and that Plaintiff furthermore lacks standing to seek injunctive relief.  However, the clear and unambiguous factual allegations in the Amended Complaint render Plaintiff's claims more than plausible and are patently sufficient to sustain this class action.

## ARGUMENT

## I.   PLAINTIFF PLAUSIBLY ALLEGES THAT THE PRODUCT CONTAINS NON-FUNCTIONAL SLACK-FILL

Defendant suggests to the Court that the slack-fill in the Product might be defensible on the basis of one or more of the "safe harbors" enumerated in 21 C.F.R. § 100.100(a).  These include

(1) the need to protect the contents of the package (2) the requirements of the machines that enclose the contents, (3) unavoidable product settling during shipping and handling, (4) the need for the product to perform a specific function that is inherent to the nature of the food, (5) the use of reusable package with a value independent of the food being stored, and (6) inability to increase fill level or further reduce package size.  *See* Def. Mem., pgs. 9-10.

But these theoretical possibilities all beg the question of why patently *factual* issues pertaining to the ultimate merits of the case are being debated on a motion to dismiss.  Defendant wishes to distract the Court's attention from the state of the *law*, according to which Plaintiff has adequately pled her claims.  Refusing to dismiss plaintiff's slack-fill claims, the court in *Waldman v. New Chapter, Inc.* held:

> Specifically, the Complaint alleges that Berry Green's packaging contained empty space or slack fill. Compl. PP 1, 2, 4, 6, 16, 17. Slack fill is "misleading" if it is: (1) "nonfunctional" (i.e., not for a valid purpose); and (2) the container "does not allow the consumer to fully view its contents." 21 C.F.R. § 100.100(a). Drawing reasonable inferences in Plaintiff's favor, the Complaint pleads both of these prongs. Specifically, the Complaint alleges that Defendant included the slack fill "to mislead the consumer," and that the packaging "is geared to making the customer believe that he/she is buying more of the product." Compl. PP 17, 19. Misleading consumers is not a valid reason to package a product with slack fill. See 21 C.F.R. § 100.100(a)(1-6). And, unquestionably, Berry Green's packaging "does not allow the consumer to fully view its contents." Pl. Ex. 2. It follows then that Plaintiff has pled misleading representations sufficient to state an unjust enrichment claim predicated on a slack fill theory.

*Waldman v. New Chapter, Inc.,* 714 F. Supp. 2d 398, 404-05 (E.D.N.Y. 2010).

*Waldman* was explaining the law with reference to the plaintiff's unjust enrichment claims. But its analysis is equally applicable to all of Plaintiff's causes of action so far as the non-functionality of Defendant's slack-fill is concerned.  The Amended Complaint is at least as well pled as the complaint in *Waldman*, which was not required to preemptively refute every conceivable rationalization the defendant might proffer for the slack-fill in its packaging.  *See Samet v. P&G*, No. 5:12-CV-01891, 2013 U.S. Dist. LEXIS 86432, at *23 (N.D. Cal. June 18, 2013) ("the complaint expressly references the regulation governing slack-fill, including the functional

3

exceptions to the rule, and states that Defendants had 'no lawful justification' for using slack-fill. Drawing all inferences in favor of Plaintiffs, as required for purposes of a motion to dismiss, the court finds Plaintiffs have alleged that Defendants violated the FDA regulation governing slack-fill").

Defendant charges that Plaintiff fails to allege specific facts demonstrating that the slack-fill in the Product is non-functional.  But courts have recognized that that large quantities of slack-fill in and of themselves support an inference of non-functionality. *See Bratton v. Hershey Co.*, No. 2:16-cv-4322, 2017 U.S. Dist. LEXIS 74508, at *13-14 (W.D. Mo. May 16, 2017) ("Hershey's statement that 'some' empty space in the boxes is related to 'efficient manufacturing and distribution' is at odds with Bratton's allegation that the slack-filled space in the boxes takes up as much as 29% and 41% of the boxes' space, that the slack-filled space serves no purpose and is not related to the settling of the contents, and that nothing about the manufacturing process prevents Hershey from filling the boxes fuller. To the extent that Hershey disputes these allegations, such dispute cannot be resolved on a motion to dismiss.").

Plaintiff's allegation of non-functional slack-fill is additionally corroborated by a comparison with another brand of rolled tortilla chips in similar packaging.  Whereas the Product has 59% slack-fill, a bag of Doritos' rolled tortilla chips contains only 43% slack-fill, indicating that at least 16% of the space in the Product bag consists in non-functional slack fill.  *See* Am. Compl. ¶¶ 25-29.  As the Amended Complaint explains: "Defendant cannot plausibly argue that it could not fit more chips in the Product bag because, as demonstrated by the Doritos bag, it is possible to place more of the same kind of chips into a similarly sized bag," Am. Compl. ¶ 28, and "The Doritos bag has 43% slack-fill. The slack-fill in the Doritos bag may or may not all be functional, but it demonstrates a bag of Takis chips needs no more than 43% slack-fill. Slack-fill in excess of 43% in the Product is **<u>certainly</u>** non-functional, as the comparable Doritos bag

demonstrates.  So all slack-fill in the Product in excess of 43% is certainly non-functional."  Am. Compl. ¶ 29.  Defendant argues that "[f]illing a bag of chips to the top would result in the chips being crushed, which is precisely why the Product is ***not*** filled to the brim."  Def. Mem., pg. 13.  This is a red herring, however, as Plaintiff does not allege that the Product packaging should have been "filled to the brim" or that anything short of this constitutes non-functional slack-fill.  Rather, Plaintiff's allegations are based on a specific comparison with a very similar brand of rolled tortilla chips.

Defendant objects that this is an inappropriate method of alleging non-functional slack-fill, arguing that "mere allegations that 'similarly sized' comparator products contain less slack fill than the subject products do not suffice to meet this burden."  Def. Mem., pg. 11.   However, New York courts have expressly endorsed Plaintiff's methods, recognizing that a plaintiff plausibly alleges a slack-fill claim under  NY GBL § 349 or NY GBL § 350 when "comparisons to similar products can be made." *Bautista v. Cytosport, Inc.*, No. 15-CV-9081, 2016 U.S. Dist. LEXIS 171468, at *13 (S.D.N.Y. Dec. 12, 2016).  The method is also endorsed by European Union policymakers,[1] as well as by simple common sense.  *See Escobar v. Just Born*, No. CV 17-01826, 2017 U.S. Dist. LEXIS 186573, at *36 (C.D. Cal. June 12, 2017) ("Plaintiff also juxtaposes Defendant's Products against Boston Baked Beans packaging [to] provide a *factual* counterexample to Defendant's claim that any one of the above functionality factors applies… Based upon the foregoing allegations, the Court finds that Plaintiff has adequately alleged that the Products' slack-fill, comprising 35.7% of the Products' box, is nonfunctional.").

Defendant argues that Plaintiff's use of comparator products is inconsistent with the FDA's determination that "there is significant variability in the amount of slack-fill in packages, both between

---

[1] "For the purpose of this study misleading packaging is defined as any kind of product packaging that notwithstanding a cursory examination as a result of the size of the packaging, its form or design or other important elements directly related to the packaging, including as well **comparisons** of the product in its current state to previous packaging and **to competitors' packaging**, deceives or is likely to deceive the average consumer …" IMCO (2012). Internal Market and Consumer Protection: Misleading Packaging Practices, Directorate- General for Internal Policies, European Parliament: Policy Department A: Scientific and Economic Policy (emphasis added).

and within commodity classes and even within a single-product line." *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123, 64135 (Dec. 6, 1993). *See* Def. Mem., pg. 11. However, the FDA was not here promulgating the pleading standards that need be met in order to survive a motion to dismiss. Rather, it was explaining why it was unprepared to issue any blanket rules specifying the maximum allowable slack-fill in any given product line. And Plaintiff is not claiming anything to the contrary. She does not argue that any slack-fill in all tortilla chip products beyond the 43% found in Doritos is *ipso facto* non-functional as a matter of law. She does not argue that the Doritos bag would serve as irrebuttable proof of non-functional of slack-fill in the Product at trial. Rather, she argues that the comparison provides the "further factual enhancement" required to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557), raising Plaintiffs' "right to relief above the speculative level," *Twombly*, 550 U.S. at 555, by "nudg[ing]" her allegations of non-functionality "across the line from conceivable to plausible." *Id.* at 548.

Defendant argues that even if slack-fill comparisons were a permissible method of pleading non-functionality in principle, Plaintiff's particular comparison is vitiated by the fact that "the Doritos and Takis products compared in the pictures have different net weights, differ in the length and width of their packaging and were distributed by different companies." Def. Mem., pg. 14, n.4. These differences do not undermine Plaintiff's comparisons, however. While the two bags' dimensions are not precisely identical, the difference is not large. The Product bag has 7.25 inches of vertical capacity and is 6 inches wide. *See* Am. Compl. ¶ 25. The Doritos bag has 7.56 inches of vertical capacity and is 4.75 inches wide. *See* Am. Compl. ¶ 27. There is no obvious reason why the relative narrowness of the Doritos bag would allow it to accommodate more chips vertically and thus make do with less functional slack-fill. If anything, the relative narrowness suggests that the Doritos would require *more* vertical slack-fill in order to properly protect the contents. But in fact, Doritos achieves this end with *less* slack-fill. Nor is the fact that the two products have

different distributors germane. It stands to reason that some manufacturers will be more circumspect about avoiding non-functional slack-fill than are others. The fact that the two brands are owned by different entities has no logical bearing on whether it is technologically feasible to include more chips in the Product. Finally, the fact that the Doritos bag contains 4.25 oz. of rolled tortilla chips whilst the Product contains only 4.0 oz. hardly undermines the comparison. On the contrary, this difference is entirely consistent with the higher fill level in Doritos, which is the very point of the comparison. The *Bautista* court required "comparisons to similar products," not comparisons to "identical" products—Defendant's proposed standard.

Perhaps Defendant's suggestion is that the Product and Doritos are enclosed by different kinds of machines or stored and transported in different ways. And concededly, knowing that Defendant's production and distribution systems were precisely identical to those of competitors might be required to demonstrate a likelihood that Plaintiff will prevail on the merits. However, "[t]he *Twombly* Court stated that '[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity].'" *Arista Records*, 604 F.3d at 120 (quoting *Twombly*, 550 U.S. at 556) (emphasis added). Plaintiffs' comparison products are sufficient to raise this reasonable expectation.

The Second Circuit has unequivocally rejected the evidentiary standard that Defendant implicitly asks the Court to impose: "The *Twombly* plausibility standard, which applies to all civil actions, *see Iqbal*, 129 S. Ct. at 1953, does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly with the possession and control of defendant." *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010). Defendant is demanding that Plaintiff plead specific facts that rule out any meaningful differences between its manufacturing and packaging processes and those of the comparison products. But *Twombly* does not "require

7

heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The precise capabilities of Defendant's machines is clearly subject matter for discovery and hence irrelevant at this early stage of the litigation.  Defendant understands perfectly well that Plaintiff cannot access its premises and that it is therefore impossible for her to proffer the information which it insists is necessary to survive its motion to dismiss.

## II.   PLAINTIFF PLAUSIBLY ALLEGES MATERIAL DECEPTION

Defendant argues that several courts "have held that reasonable consumers would not be misled by non-functional slack-fill as a matter of law where the products clearly disclosed accurate net weight and/or the total product count."  Def. Mem., pg. 15 (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018)).  This is hardly the universal consensus, however.  One court in the Second Circuit observed that defendant "does not cite a single controlling decision of law standing for the proposition that food packaging is incapable of being materially misleading if it displays the net weight and lists the number of pieces inside of the package. This Court is unwilling to manufacture such a precedent here."  *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697, 2016 U.S. Dist. LEXIS 149795, at *16 (S.D.N.Y. Oct. 26, 2016).

This position is shared by courts across the country, which have not seized on net weight/product count disclosures as a reason to dismiss unlawful slack-fill claims.  See *Bratton*, 2017 U.S. Dist. LEXIS 74508, at *11 ("the existence of the Federal prohibition against slack-fill supports the reasonableness of a consumer's belief that the package of candy he purchases will not have 29% or 41% non-functional slack-fill."); *Samet*, 2013 U.S. Dist. LEXIS 86432, at *30-33 ("the amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage"); *Thomas v. Costco Wholesale Corp.*, No. 5:12-CV-02908, 2014 U.S. Dist. LEXIS 46405, at *28 (N.D. Cal. Mar. 31, 2014) ("The Court

finds that [the]… slack-fill claims are properly pled, may deceive a reasonable consumer, and are inappropriate to resolve at the motion to dismiss stage."); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 932 (N.D. Cal. 2014) ("The appearance of the can itself, not its label, is what Plaintiff alleges to be misleading… While StarKist argues that it is 'simply not plausible' that Plaintiff was deceived, the Court cannot agree that these claims lack plausibility on their face."); *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492, 2014 U.S. Dist. LEXIS 164425, at *20 (N.D. Cal. Nov. 21, 2014) ("The SAC alleges that 'Defendant has routinely employed slack filled packaging containing non-functional slack fill to mislead consumers into believing they were receiving more than they actually were.'… The SAC also alleges that Plaintiff purchased slack filled packages of EnviroKidz Panda Puffs and Heritage Flakes, and that she would not have done so had she realized that the packages were slack filled… Those allegations are sufficient to state a claim."); *Watkins Inc. v. McCormick & Co. (In re McCormick & Co.)*, 215 F. Supp. 3d 51, 60 (D.D.C. 2016) ("The size of a package signals to the consumer vital information about a product and is as influential in affecting a customer's choices as an explicit message on its surface.").

Courts evaluating NY GBL §§ 349, 350 claims routinely find that the actual real-world impact of disclaimers on consumers is a complicated question of fact that cannot be resolved on a motion to dismiss. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing."); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 U.S. Dist. LEXIS 126880, at *49 (E.D.N.Y. Sep. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement"); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 U.S. Dist. LEXIS 135758, at *24 (E.D.N.Y. Sep. 23, 2014) ("[a] solicitation

may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures") (quoting *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006)); *Hughes v. Ester C Co*., 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) (a disclaimer stating the product is not intended to treat any disease does not eliminate "the possibility of a reasonable consumer being misled"); *Lonner v. Simon Prop. Grp., Inc*., 866 N.Y.S.2d 239, 247 (App. Div 2008.) (the complaint stated a cause of action under NY GBL § 349 because "it alleges that the inadequate font size in which the dormancy fee provision was printed, and the defendant's concomitant failure to conspicuously disclose that provision, constituted a deceptive business practice."); *Goldemberg v. Johnson & Johnson Consumer Cos*., 8 F. Supp. 3d 467, 479 (S.D.N.Y. 2014) (rejecting defendant's argument that "it is unreasonable to assume each Aveeno product contains exclusively natural ingredients when its labeling affirmatively identifies its one or two natural ingredients as well as the synthetic ingredients"). *See also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Defendant declares that "it is well known by consumers that packaging for delicate snacks such as rolled tortilla chips cannot be filled completely with Product." Def. Mem., pg. 17. But Plaintiff does not argue that the Product should have been "filled completely," which is a red herring. While reasonable consumers may expect some degree of slack-fill in certain kinds of food, they do not expect non-functional slack-fill, which is what Plaintiff alleges and what the comparison chips corroborate. Reasonable consumers may not expect chips to be filled to the very top of the bag, but they do expect that the size of the packaging will reflect the amount of food inside. That they may also expect the minimum necessary level of functional slack-fill does not undercut this expectation. Even if Defendant is correct that consumers expect non-functional slack-fill, this

10

offers no legal protection:  "FDA also notes that, although consumers may become used to the presence of nonfunctional slack-fill in a particular product or product line, the <u>recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional</u>." 58 FR 64123, 64131 (emphasis added).  To hold that consumers' general encounters with non-functional slack-fill immunizes Defendant would be to reward bad actors with the perverse incentive to deceive consumers in the hopes of eventually normalizing their deceptive practices.

Defendant invokes *Ebner v. Fresh, Inc.* as a precedent about when slack-fill is deceptive to the reasonable consumer.  *See* Def. Mem., pgs. 15-16.  But as the *Ebner* court recognized, this was not even a slack-fill to begin with:

> The FAC alleges that "the significant portion of product falling below the mechanical stop device constitutes nonfunctional slack fill." This cannot constitute "slack fill" because under the plain language of the statute, slack fill means the portion of the container without product, i.e., empty space. Thus, the lip product falling below the stop device does not meet the definition of actionable slack fill.

*Ebner v. Fresh, Inc.*, 838 F.3d 598, 967 (9th Cir. 2016)

Since *Ebner* was not even about slack-fill, it says nothing about when slack-fill is or is not deceptive to the reasonable consumer.  To the extent *Ebner* held that accurate weight disclosures shielded the defendant from liability, this was owing to facts specific to the product at issue, a lip balm whose tube design involved a screw mechanism and additional weight at the bottom:

> Just as the reasonable consumer understands that additional product may remain in the dispenser tube after the screw mechanism prevents further advancement of the lip bullet, the reasonable consumer also understands that some additional weight at the bottom of the tube — not consisting of product — may be required to keep the tube upright.

*Id*. at 967.

This assessment has no logical bearing on the instant action.  Defendant cannot plausibly argue that the reasonable consumer naturally expects to find the amount of slack-fill in its bags rather than the smaller amount found in competitor products.  For "the amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage." *Samet*, 2013 U.S. Dist. LEXIS 86432, at *32-33.  Moreover, *Ebner* was not a food

case and so did not implicate the F.D.A.'s New York-incorporated food-specific regulations.

Defendant also cites *Fermin v. Pfizer, Inc*., 15-cv-2133, 2016 U.S. Dist. LEXIS 144851 (E.D.N.Y. Oct. 14, 2016) as part of the same line of argument.  But just like *Ebner*, this was not a food case subject to the FDA's (and Congress's) determinations about the irrelevance of weight/quantity disclosures under the FDCA (discussed below).  Like *Ebner*, *Fermin* was dismissed by *Izquierdo* as irrelevant.  *See Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *16 ("Those decisions were issued by non-controlling courts and were based, either in whole or in part, on California consumer fraud law. The instant case, however, deals with New York law.").

*Verzani v. Costco Wholesale Corp*., 641 F. Supp. 2d 291 (S.D.N.Y.) is even less relevant. The *Verzani* court held that a reasonable consumer *who could see through the clear plastic top* of a shrimp and cocktail sauce mix would conclude that the product's 16 oz. net weight referred to the weight of the shrimp and cocktail sauce combined, not the shrimp alone.  *Id.* at 299-300.  Thus, the question was not whether a net weight disclosure cured deceptive packaging, but how "net weight" is reasonably interpreted, as encompassing all the ingredients or only the shrimps.  That issue does not present itself in this case.

The Amended Complaint cites numerous statements by the FDA, often discussing <u>congressional intent</u>, to the effect that accurate net weight/quantity disclosures on the label of a food product do not absolve a manufacturer of liability for non-functional slack-fill.  *See* Am. Compl. ¶ 43 ("FDA disagrees with the comments that stated that net weight statements protect against misleading fill. FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading.") (quoting 58 FR 64123, 64128); Am. Compl. ¶ 43 ("Congress stated… in arriving at section 403(d) of the act that that section is 'intended to reach deceptive methods of filling where the package is only partly filled and, despite the declaration of quantity of contents on the label,

creates the impression that it contains more food than it does.'" (quoting 58 FR 64123, 64128-64129): Am. Compl. ¶ 44 ("Congress stated… that 'Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label.'") (quoting 58 FR 64123, 64131).

Defendant argues that "[c]ourts, not the FDA, determine whether a product is misleading under" state consumer protection laws."  Def. Mem., pgs. 17-18 (quoting *Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460, 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016)).  But this argument overlooks that FDA regulations have been incorporated into the New York laws applied by New York courts.  *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *11. ("Here [in a slack-fill action brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA").  Indeed, the *Izquierdo* court recognized that to hold that accurate weight/quantity disclosures defeat deceptive slack-fill claims as a matter of law would essentially nullify federal slack-fill regulations, which were promulgated as <u>additional</u> protections beyond those afforded by labeling regulations: "Federal and state laws provide that food manufacturers are required to label products accurately and package products in a non-misleading way. These obligations are independent of one another."  *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *15-16.

Even if Defendant were correct that New York law is not strictly dictated by FDA regulations and guidance, these would still constitute powerful persuasive authority entitled to substantial deference.  Congress investigated the effect of oversized packaging on consumer perceptions of product quantity and found that such packaging can mislead even where quantity is

accurately disclosed on the label.  Defendant has not given the Court any reason to second-guess these conclusions, which have been corroborated by numerous studies of consumer behavior, including those cited in Amended Complaint ¶ 46.  Defendant dismisses "the Amended Complaint's reliance on a couple of studies" as "unpersuasive."  Def. Mem., pg. 18.  But it offers no reason why these peer-reviewed scientific studies are entitled to less weight than its own untutored, self-serving, and psychologically unrealistic assumptions that net weight/quantity disclosures correct for the effect of misleading packaging in the minds of reasonable consumers.

Courts have recognized the FDA's persuasive authority on this question.  *See In re McCormick & Co)*, 215 F. Supp. 3d at 61 ("nonfunctional slack-fill is considered deceptive as a matter of law, so there is nothing implausible about allegations of actual, widespread deception among McCormick's customers.").  So too has the state of California, whose consumer protection laws expressly incorporate passages from the Federal Registrar providing that accurate disclosures do not cure non-functional slack-fill into its consumer protection laws.  *See* Cal. Bus. & Prof. Code § 12606.2(e).  ("This section shall be interpreted consistently with the comments by the United States Food and Drug Administration on the regulations contained in Section 100.100 of Title 21 of the Code of Federal Regulations, interpreting Section 403(d) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 343(d)), as those comments are reported on pages 64123 to 64137, inclusive, of Volume 58 of the Federal Register.").

Defendant argues that "New York law does not cover [a plaintiff's] failure to read an unambiguous' disclosure."  Def. Mem., pg. 18 (quoting *Fermin*, 215 F. Supp. 3d at 212).  This is not Plaintiff's argument, however.  Plaintiff does not argue that a reasonable consumer would fail to read Defendant's weight and quantity disclosures, but that these disclosures cannot actually correct the misleading visual impression created by unlawfully slack-filled packaging, whether read or not.  Defendant's net weight/quantity disclosures may indeed be "unambiguous," as Defendant

14

argues.  See Def. Mem., pg. 17.  But it does not follow that they can serve a protective function. Defendant claims that "any consumer could easily ascertain the number of rolled tortilla chips in the bags by multiplying the number of servings by the number of pieces per serving." Def. Mem., pg. 18-19.  However, given that a reasonable consumer does not know the *size* of a single tortilla chip, merely knowing the number of chips inside would not apprise him of how much food is in the bag.

This fact distinguishes the instant action from *Wurtzburger v. Ky. Fried Chicken*, cited by Defendant, *see* Def. Mem., pg. 15, where plaintiff "suggest[ed], despite purchasing an eight piece chicken meal, that Defendant should have filled the bucket up to the rim so she would have received more chicken—more than the eight pieces she bargained for." *Wurtzburger v. Ky. Fried Chicken*, No. 16-cv-08186, 2017 U.S. Dist. LEXIS 205881, at *3-4 (S.D.N.Y. Dec. 13, 2017).  The size of chicken pieces in America today is fairly standardized.  While no two pieces of chicken are precisely identical, consumers have a fairly accurate sense of how much food one piece of chicken consists in.  Some pieces of chicken may be slightly bigger while others are slightly smaller.  But there are inherent, biologically imposed limits to the variability consumers will encounter.  So the representation that Wurtzburger would be receiving eight pieces of chicken actually conveyed meaningful information.  By contrast, there is no biologically natural size for a rolled tortilla chip. It can be any size the manufacturer chooses, which is why product quantity disclosures are not similarly informative in this case.  By Defendant's logic, it could halved the size of its rolled tortilla chips while keeping the quantity constant and consumers would still have no claim.

A disclaimer that consisted in a line drawn across the front of the Product bags indicating the fill level inside might indeed apprise reasonable consumers of how much food they are purchasing because it actually speaks to what they care about, volume.  This cannot be said of Defendant's net weight/quantity statements, however.  As *United States v. 174 Cases* observed:

The question was not whether the ordinary purchaser would expect to find a particular number of individual candies in the box but whether such a purchaser would expect to find more of the Delson box filled. For example, the purchaser of a crate of apples opens the crate and finds it half filled. To determine whether he was deceived we do not ask whether he expected to find a particular number of individual apples in the crate. We do ask whether he expected to find more of the crate filled. This is the pertinent question. People do not think in terms of the number of individual mints when buying them in containers.

*United States v. 174 Cases*, 287 F.2d 246, 247-48 (3d Cir. 1961).

The same holds true of weight. We do not ask whether a reasonable consumer expected to find that a half-filled crate of apples weighed more than it did, but whether he expected it to be more filled with apples. And likewise with Defendant's product. Reasonable consumers have no ready way to translate product weight into volume, and product volume is what they ultimately care about. This is why movie goers will order a small popcorn or a large popcorn, not a "featherweight" popcorn or a "heavyweight" popcorn, and why drinks are advertised in fluid ounces rather than regular ounces. This thoroughly distinguishes the instant action from a case like *Fermin*, which was about *pills*. Unlike food, pills are not subject to 58 Fed. Reg. 64123, 64128-64129, 64131 and its incorporation into New York state law. Moreover, consumers care about pill count, not pill volume, because count is what determines how much active ingredient they are obtaining. By contrast, they care about chip volume, not chip count (or weight), because volume is what determines how much satisfaction their palates will be receiving.

These are not the idiosyncratic sentiments of a single plaintiff, but psychological plausible assessments of consumer cognition that many courts have endorsed. *See Bratton*, 2017 U.S. Dist. LEXIS 74508, at *15-16 ("a reasonable consumer would expect the candy boxes' labeling information to comport with the dimensions of the box"); *In re McCormick & Co.*, 215 F. Supp. 3d at 60. ("An accurate statement of weight does not necessarily correct a consumer's misimpression of product quantity based on the size of a container, because consumers are accustomed to seeing how much space a product occupies but may not know how that relates to its weight."); *Escobar v. Just Born*, 2017 U.S. Dist. LEXIS 186573, *25 ("In the Court's view, a reasonable consumer is not

necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size. In other words, the fact that the Products' packaging accurately indicated that a consumer would receive 141 grams or 5 ounces of candy does not, on its own, indicate to a reasonable consumer that the Products' box may not be full of candy and that, instead, 35.7% of the box is empty. Rather, a reasonable consumer may believe that 141 grams or five ounces of candy is equivalent to an amount approximately the size of the Products' box.").

Defendant's reasonable consumer argument relies substantially on *Daniel v. Mondelez*, where the court argued:

> While disclaimers may not always defeat a claim of deception…, the Court draws a distinction between misrepresentations concerning *quantitative* as opposed to *qualitative* characteristics of a product. When the alleged misrepresentation concerns a qualitative quality, consumers are more often forced to weigh various competing statements to tease out the truth — allowing for differing reasonable interpretations. In contrast, when the alleged misrepresentation concerns only the amount or quantity of a product, consumers, once apprised of the express accounting on the label, cannot be said to be misled (so long as the information is presented in a clear, easy to understand manner). Recognizing the existence of slack-fill in almost all products, consumers are especially likely to consider the label, rather than the packaging, to be the accurate measure of the amount of product.

*Daniel*, 287 F. Supp. 3d at192 n.14.

Plaintiff has now explained why she respectfully questions *Daniel*'s reasoning.  The operative assumption is that the precision and accuracy of quantitative as opposed to qualitative disclaimers promises to resolve any consumer confusion generated by oversized packaging.  But Plaintiff argues that precision and accuracy as such do not guarantee that the information in question will be *meaningful* to a reasonable consumer.  Suppose Defendant had succeeded in quantifying the Product's contents down to the molecule, accurately listing the exact number of molecules of each chemical ingredient that a consumer will have consumed by the time he is done with the package. Such information would be precise, accurate, and unambiguous.  Yet it does not follow that a reasonable consumer can usefully process this information so as to meaningfully assess product quantity and "tease out the truth."  This thought experiment is merely an extreme illustration of the

17

points Plaintiff has made regarding quantity and weight disclosures—that quantitative precision is not equivalent to human usefulness.  This is exactly why Congress elected to enact prohibitions on non-functional slack-fill to supplement existing labeling regulations, as *Izquierdo* noted.

*Daniel* argued that "absent exceptional circumstances, a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill."  *Id.* at 192.  But the opposite is more nearly true.  The norm is that written quantity disclosures cannot offset the impression created by deceptive packaging.  Only under exceptional circumstances can they do so.  A food scientist who was knowledgeable about snack foods might successfully employ the Product's net weight disclosures in conjunction with its ingredients list to approximate the actual volume of the chips inside.  But this presupposes specialized scientific expertise that cannot be imputed to the reasonable consumer.

Defendant might dispute Plaintiff's cognitive model with its own alternative model.  But this is plainly the kind of disagreement that cannot be resolved on a motion to dismiss as a matter of law and rather needs to be put before a jury informed by both expert testimony and its own experience and common sense.

### III.  PLAINTIFF PLAUSIBLY ALLEGES INJURY

Defendant argues that Plaintiff "has not pled a cognizable injury because she received precisely the amount of product promised on the packaging of Takis rolled tortilla chip products she purchased."  Def. Mem., pg. 19.  But this argument presupposes the dubious psychological assumptions rebutted above—namely, that Plaintiff was bargaining for a particular weight or quantity of chips rather than for a particular *volume*.  Thus, Defendant's argument that Plaintiff was not injured is just a reprise of its earlier argument that she was not deceived, which has been

disposed of above.  As Defendant's own discussion of *Fermin* clarifies, *see* Def. Mem., pgs. 19-20, these are just two sides of the same coin.

Citing *Izquierdo*, Defendant goes on to argue that Plaintiff was required to demonstrate that she paid a higher price for the Product than she would have absent Defendant's deceptive practices, and also that this higher price flowed from the actions of Defendant rather than the retailer.  *See* Def. Mem., pgs. 20-21 (citing *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *7).  But as the *Daniel* court recognized, Defendant need not have raised the price for Plaintiff to have been injured:

> In most price premium cases, the alleged misrepresentation conveys to consumers that the product at issue contains a unique, desirable quality… In most cases, "price premium" should thus be observable through an increased price in comparison to products without the desirable quality… Slack-fill cases, however, involve a categorically different type of misrepresentation — *lesser amount or quantity* than represented. Even while holding prices steady, manufacturers can effectively "inflate" the price by providing less product.

*See Daniel*, 287 F. Supp. 3d at 195-96.

This was precisely the theory of injured pleaded in the Amended Complaint:

> Plaintiff and Class members were injured as the result of Defendant's deceptive conduct because they paid money for less Product than Defendant represented they would be receiving. Plaintiff and the Class were deprived of the benefit of their bargain.

> Competitor's Doritos bag chips demonstrates that a bag of Takis chips should contain **at most** 43% functional slack-fill, and therefore should contain **at least** 57% chips. However Plaintiff MORRISON paid $1.49 for each bag of the Product and her bags were only about 41% full of chips, with slack-fill of about 59%.

> Since the Product bags were 41% full when they should have been **at least** 57% full, it follows that Plaintiff received **at most** 72% of what she bargained for. Accordingly, **at least** 28% of the purchase price, or about $0.42, was unlawfully taken in each bag.

> In order for Plaintiff and Class members to be made whole, they must be compensated in an amount of the proportion of the purchase price equal to the percentage of non-functional slack-fill in the Product, which amount Plaintiff and the Class paid for that Defendant did not-deliver.

Am. Compl. ¶¶ 52-55.

As the *Daniel* Court also observed, this theory of injury "is consistent with *Lazaroff* [*v. Paraco Gas Corp*] which the Second Circuit endorsed as a case illustrative of price premium injury." *Daniel*, 287 F. Supp. 3d 177, 196.  The *Lazaroff* court observed:

> Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised. . . Thus, plaintiff has properly alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of GBL § 349.

*Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867, 867 (Sup. Ct.)

*Lazaroff* did not require the plaintiff to plead that it was defendant and not the retailer who set the price of the propane cylinder.  Nor did it require the plaintiff to show that the product at issue were more expensive than other fully comparable propane cylinders on the market.  The plaintiff was promised a full cylinder of propane but received something less, so he was entitled to the difference between the product's value as warranted and its value as delivered.  This discrepancy was unaffected by the product's comparative expensiveness, and the plaintiff was not required to address it.  Lazaroff adequately pled injury because, whether or not the defendant set the products' retail price, it most certainly set their fill level.  And it was by virtue of their fill level that plaintiff was deprived of the benefit of his bargain and injured.  It was the defendant who caused the non-functional slack-fill in the propane tank and it was the non-functional slack-fill that caused the discrepancy between what Lazaroff was promised and what he actually received.  There is no daylight between *Lazaroff* and the instant action.  Just as Lazaroff failed to receive the full amount of propane he was promised, so Plaintiff here failed to receive the full amount of tortilla chips she was promised.

Defendant attempts to distinguish *Lazaroff*  because in that case "[e]ach cylinder had a label indicating the accurate amount of propane inside, but the label was hidden by a metal cage that was

removed only after the plaintiff purchased the product, and was therefore 'not conspicuous for the average consumer.'"  Def. Mem., pg. 22 (quoting *Id.* at *4-5).  This distinction is irrelevant to the question of injury, however.  The distinction might speak to the issue of whether a reasonable consumer would be deceived by Defendant's packaging (discussed above).  But it has nothing whatsoever to do with whether Plaintiff has adequately alleged injury.  As the *Daniel* court noted in rejecting an identical argument:

> Noticeably, Defendant does not challenge the reasoning in *Lazaroff* — that less product than promised constitutes an injury — but instead attempts to distinguish the circumstances here from those present in that case… Defendant argues that *Lazaroff* is inapposite because it involved a dispute over the visibility of the label which was allegedly obscured by a metal cage.  In contrast, the parties in this action do not dispute that the Product's net weight was clearly visible. As discussed earlier, the accuracy and visibility of the labels are relevant to whether an action is materially misleading… Defendant's argument thus conflates elements two (material misrepresentation) and three (injury) for claims under sections 349 and 350.

*Daniel*, 287 F. Supp. 3d at 197.

Defendant argues that *Daniel*'s analysis of injury "was in error and should be disregarded" because "*Lazaroff* involved an explicit written representation on the product that was contradicted by a hidden label – and therefore is much different from the slack-fill allegations at issue in both *Daniel* and this case."  Def. Mem., pg. 23 n.8.  But as shown above, the *Daniel* court clearly explained why this distinction is irrelevant to the question of injury in response to an identical argument from the defendant there.  And Defendant here says nothing to undercut this explanation.  On the contrary, it merely reprises the argument that *Daniel* expressly rejected.

Defendant contends that "Ms. Morrison cannot reasonably allege that a smaller package of tortilla chips that contained the same amount of product would have been priced any lower or would have cost Ms. Morrison any less."  Def. Mem., pg. 21.  But Defendant here invents a requirement that does not exist under New York law as delineated by New York's highest court:

> [T]here is a difference between reliance and causation, as illustrated by the facts of this case. Here, plaintiffs allege that because of defendant's deceptive act, they were forced to pay a $ 275 fee that

they had been led to believe was not required.  In other words, plaintiffs allege that defendant's material deception caused them to suffer a $ 275 loss.  This allegation satisfies the causation requirement.  <u>Plaintiffs need **not** additionally allege that they would not otherwise have entered into the transaction</u>.  Nothing more is required.

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30 (2000) (emphasis added).

"Nothing more is required" in the instant action either.  The *Stutman* plaintiffs were <u>not</u> required to show that the bank would only have charged them $100, rather than $275, had it been upfront about the existence of a fee.  For all we know, the bank might still have charged $275 and the plaintiffs might have agreed to pay it.  The *Stutman* plaintiffs bargained for banking services that did not involve a $275 fee but received banking services that did involve a $275 fee.  Their injury was simply the difference in value between what was promised to them and what was actually delivered—$275.  Plaintiff Morrison's injury also consists in the difference between what was promised and what was delivered.  What either Plaintiff or Defendant might have done in some counterfactual scenario where there was no deception is neither here nor there.

## IV.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because there is no indication that she intends to purchase any of the Products again, and is therefore unlikely to suffer any future injury.  *See* Def. Mem., pgs. 23-25.  However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F. Supp. 3d 440, 445 (E.D.N.Y. 2014).  To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *Id*.  *See Delgado v. Ocwen Loan Servicing Company, LLC*, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would

eviscerate the intent of the California legislature in creating consumer protection statutes.") (internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

Some have argued that the policy considerations behind state consumer protection laws must yield to the Constitution. But there is no conflict between the two. The Supreme Court has held that "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This formulation thus presupposes that the proper party *exists*: The reference is to *the* proper party, whomever that happens to be, not to *a* proper party, who might or might not exist. And this is consistent with the reasoning of courts that have held injunctive relief to be appropriate in consumer fraud class actions: Given the specific conundrum intrinsic to these cases—that anyone who becomes aware of the deception and so is positioned to bring a complaint is unlikely to be duped again—the usual application of the standing rule must be adjusted accordingly if there is ever to be a proper party, which the *Raines* formulation indicates there must be. In these cases, the proper party to request injunctive relief is the party that already has standing to request other forms of relief arising out of the same case or controversy. This is the *best conceivable* party given the very nature of the cause of action and the public interest. Article III does not require more than this. The alternative is a state of affairs in which those who

need and are entitled to injunctive relief are epistemologically unable to act on that right while those who have the knowledge to do so are for this very reason legally disqualified from doing so.

## SUMMARY AND CONCLUSION

All of Defendant's arguments are baseless.  Their weaknesses include (1) attempting to adjudicate patently factual questions of slack-fill functionality on a motion to dismiss (Sec. I), (2) asking the court to endorse as a matter of law what are psychologically dubious assumptions about consumer behavior (Sec. II), (3) inventing a newfangled injury doctrine with no basis in existing case law (Sec. III), and (4) ignoring that New York courts have allowed plaintiffs to pursue injunctive relief on behalf of absent class members (Sec. IV).  Given the failure of Defendant's arguments on these and other fronts, Plaintiff respectfully asks the Court to deny Defendant's motion to dismiss.

Dated: June 11, 2018

Respectfully submitted,

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2018, true and correct copies of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Class Action Complaint were served on all counsel of record via ECF.

*/s/ C.K. Lee*
C.K. Lee, Esq.