UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
AURORA MORRISON, on behalf of herself :
and others similarly situated, :
         Plaintiff, :
: **OPINION AND ORDER**
v. :
: 18 CV 531 (VB)
BARCEL USA, LLC, :
         Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff brings this putative class action against defendant Barcel USA, LLC, for alleged violations of New York General Business Law ("GBL") Sections 349 and 350, and for common law fraud. Essentially, plaintiff alleges she purchased two bags of Takis Rolled Tortilla Chips (the "Product")—one "Zombie" flavored and one Guacamole flavored—and the bags contained too much air and too few chips.

      Now pending is defendant's motion to dismiss the first amended class action complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #25).[1]

      For the reasons set forth below, the motion is GRANTED.

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

---

[1] Defendant purports to move only pursuant to Rule 12(b)(6), but argues plaintiff lacks standing to seek injunctive relief under GBL § 349. However, standing is properly analyzed under Rule 12(b)(1). Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006).

1

**DISCUSSION**

I.    Standard of Review

    A.    Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should consider the Rule 12(b)(1) challenge first. Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

    B.    Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II. Standing to Seek Injunctive Relief

Plaintiff seeks to enjoin defendant from packaging the Product with non-functional slack fill (unnecessary empty space). Defendant argues plaintiff lacks standing to seek injunctive relief under GBL Section 349 because plaintiff does not plausibly allege a risk of future injury.

The Court agrees.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014) (internal citation omitted). To establish standing in federal court, a litigant must allege an actual case or controversy. Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998). "Specifically, a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is

3

likely to redress the injury." Id. (internal citation omitted). Moreover, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." Peck v. Baldwinsville Cent. Sch. Dist., 351 F. App'x 477, 479 (2d Cir. 2009) (summary order) (quoting Deshawn E. by Charlotte E. v. Safir, 156 F.3d at 344). A plaintiff who concedes he is no longer likely to purchase a product because he knows of a defendant's alleged deception and false advertising does not have standing to enjoin the defendant's sales practices. See Kommer v. Bayer Consumer Health, 710 F. App'x 43, 44 (2d Cir. 2018) (summary order).

Here, plaintiff alleges she and the putative class members "would not have purchased [the Product] at the given price had they known the truth." (Doc. #22 ("Am. Compl.") ¶ 10). Therefore, plaintiff cannot show a likelihood of future injury.

Accordingly, plaintiff's claim for injunctive relief under GBL Section 349 is dismissed.

III. Merits

Plaintiff alleges defendant violated GBL Sections 349 and 350 and committed fraud by increasing the size of the Product's bags, and filling them with empty space to make it appear to consumers that they are buying more chips than are being sold. Defendant argues plaintiff's claims fail because plaintiff does not plausibly allege the slack fill is non-functional.

The Court agrees with defendant.

Sections 349 and 350 prohibit "[d]eceptive acts or practices" and "false advertising," respectively, "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander

4

v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 941, 944 (2012)).

The GBL has been interpreted to allow for claims for excessive slack fill. See Izquierdo v. Mondelez Int'l, Inc., 2016 WL 6459832, at *3 (S.D.N.Y. Oct. 26, 2016). "Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). But plaintiff must sufficiently allege the slack fill is non-functional:

> New York's General Business Law does not, itself, contain safe harbors for functional slack-fill. See N.Y. Gen. Bus. Law §§ 350, 350-a. However, it does make it "a complete defense that the act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, . . . any official . . . agency of the United States as such rules, regulations or statutes are interpreted by . . . federal courts." N.Y. Gen. Bus. Law § 349(d). Therefore, if slack-fill passes muster under federal law, there is no state-law violation.

Izquierdo v. Mondelez Int'l, Inc., 2016 WL 6459832, at *3; see also Bautista v. CytoSport, Inc., 223 F. Supp. 3d 182, 192 (S.D.N.Y. 2016) (holding plaintiff's claim for common law fraud failed because plaintiff failed satisfactorily to allege slack fill was non-functional).

The Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(d), and its implementing regulations at 21 C.F.R. § 100.100, outline six functional purposes for using slack fill:

> i) the protection of the contents of the package; ii) the requirements of the machines used to enclose the contents in the package; iii) settling during shipping and handling; iv) the need for the package to perform a specific function; v) the food is packaged in a reusable container with empty space as part of the presentation of the food; or vi) inability to increase the fill level or reduce the package size because, for example, the size is necessary to accommodate food labeling requirements or discourage theft.

Bautista v. CytoSport, Inc., 223 F. Supp. 3d at 186–87 (citing 21 C.F.R. § 100.100). "Wholly conclusory allegations" that slack fill is non-functional "are insufficient to state a nonfunctional slack fill claim." Id. at 190 (collecting cases).

Here, plaintiff does not allege any facts supporting its allegation that the slack fill is non-functional. Instead, plaintiff alleges only that the slack fill in the Product—approximately 59 percent—is significantly greater than the amount of slack fill in its competitor's allegedly similarly sized Doritos bag, which contains approximately 43 percent slack fill. Therefore, according to plaintiff, some of the slack fill in the Product must be non-functional.

The Court is not persuaded. First, plaintiff fails to cite any Second Circuit authority relying on a comparison of similar products to uphold a claim for non-functional slack fill. Second, Food and Drug Administration guidance "is inconsistent with this approach," recognizing "there is significant variability in the amount of the slack-fill in packages, both between and within commodity classes and even within a single-product line." Alce v. Wise Foods, Inc., 2018 WL 1737750, at *8 (S.D.N.Y. Mar. 27, 2018) (emphasis removed) (quoting Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64135, 1993 WL 498605 (Dec. 6, 1993)). And third, the Court is particularly skeptical of employing such an approach when, as here, plaintiff's only other allegations as to non-functional slack-fill (besides the comparison to the Doritos bag) are wholly conclusory.

In addition, the Court disagrees with plaintiff's argument that just because the Product has more slack fill than the Doritos bag, the additional slack fill in the Product is ipso facto non-functional. "[D]ifferences in the physical characteristics of a given product, including the need to protect the product from breakage, and precision of filling equipment result in a high degree of variability in the level of functional slack-fill within commodity classes." Alce v. Wise Foods, Inc., 2018 WL 1737750, at *8 (quoting Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 2957-01, 2959, 1993 WL 1564 (Jan. 6, 1993) (emphasis removed). Plaintiff must

6

allege more than that there simply is a difference in slack fill. Plaintiff must allege facts demonstrating the additional slack fill is non-functional.

Even assuming that comparing similar products is a permissible means for alleging non-functional slack fill, plaintiff fails sufficiently to allege the Product and Doritos bag are similar. Indeed, plaintiff alleges more differences than similarities: the approximate height of the Product is 7.25 inches whereas the Doritos bag is 7.56 inches; the Product is six inches wide and the Doritos bag is 4.75 inches wide; and the Product weighs four ounces and the Doritos bag weighs 4.25 ounces. The Product and Doritos bag also have different numbers of chips per bag, different manufacturers, and different distributors.[2]

Moreover, plaintiff fails to allege whether the ingredients, surfaces, or size of the chips are similar. Cf. Alce v. Wise Foods, Inc., 2018 WL 1737750, at *8 (finding "substantial differences" between products with similar diameters and weights where proportions and volumes were different, products were manufactured by different corporations, chips had different shapes, surfaces were different, and ingredients were different). And plaintiff's remaining allegations comparing the products are conclusory; plaintiff essentially repeats that the products are the same, stating, "[t]he comparison is between the same kind of Product in the same kind of packaging that is enclosed in the same way by the same kind of technology." (Am. Compl. ¶ 33). However, "[r]epeatedly asserting that the [products] are the 'same' does not make them so." Daniel v. Mondelez Int'l, Inc., 287 F. Supp. 3d at 188 (discussing a verbatim allegation).

---

[2] Here, the Court considers pictures of the Doritos bag included in defendant's Declaration of Joshua Bussen, as plaintiff included an incomplete picture of the Doritos bag in his first amended class action complaint. See Daniel v. Mondelez Int'l, Inc., 287 F. Supp. 3d 177, 182–84 (S.D.N.Y. 2018) (considering labeling of Swedish Fish box provided by defendant on a motion to dismiss).

7

Accordingly, plaintiff's claims under GBL Sections 349 and 350 and for common law fraud are dismissed.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #25) and close this case.

Dated: January 2, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge